**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**
**CIVIL ACTION NO. 1:20-CV-00074-HBB**

**KENIKA J. HERNANDEZ**　　　　　　　　　　　　　　　　　　　　　　　**PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI, ACTING COMMISSIONER**
**SOCIAL SECURITY ADMINISTRATION**[1]　　　　　　　　　　　　　　**DEFENDANT**

**MEMORANDUM OPINION**
**AND ORDER**

BACKGROUND

Before the Court is the complaint (DN 1) of Kenika J. Hernandez ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 16) and Defendant (DN 21) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner, regarding disability, is **AFFIRMED**, and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 14). By Order entered

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

January 8, 2021 (DN 13), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

On August 10, 2016, Plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income (Tr. 18, 359-61, 362-68, 369-70, 371-79). Plaintiff alleged that she became disabled on July 16, 2001, as a result of insulin dependent diabetes, congestive heart failure, 12 slipped discs in lower back, anxiety, depression, hearing loss left ear, and heart problems/blockages (Tr. 18, 124-25, 140-41, 372). Her claims were denied at the initial review stage on October 11, 2016, and at the reconsideration stage on December 21, 2016 (Tr. 18, 122, 123, 138-39, 154-55, 156, 157, 173, 190). Plaintiff then filed a written request for a hearing before an Administrative Law Judge (Tr. 18, 220-21). On February 13, 2018, Plaintiff amended the alleged onset of her disability to October 15, 2017 (Tr. 381).

Administrative Law Judge Amy Benton ("ALJ") conducted a video hearing from St. Louis, Missouri (Tr. 18, 50, 52-53). Plaintiff and her counsel, Charles Dale Burchett, participated from Bowling Green, Kentucky (Id.). Barry J. Brown, an impartial vocational expert, was present by telephone but did not testify during the hearing (Tr. 52-70). Following the hearing, Dr. Zaid Aljuboori performed a consultative medical examination of Plaintiff and rendered a functional opinion (Tr. 1303-05). Mr. Brown subsequently reviewed exhibits in the record and responded to vocational interrogatories from the ALJ (Tr. 18, 528, 535-38). Mr. Brown's answers to the interrogatories were then provided to Plaintiff's counsel, who did not object to the evidence being admitted to the record (Tr. 18, 544).

In a decision dated February 7, 2019, the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 18- 34). The ALJ indicated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2022 (Tr. 21). At the first step, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 15, 2017, the amended alleged onset date (Id.). At the second step, the ALJ determined that Plaintiff has the following severe impairments: obesity, coronary artery disease, degenerative disc disease of the lumbar spine, diabetes mellitus, depression, and anxiety (Id.). The ALJ also found that all other impairments identified by Plaintiff are non-severe or not medically determinable (Id.).[2]

At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 22). The ALJ reached the above conclusion as a result of reviewing Plaintiff's impairments using section 1.00 *et seq.* (musculoskeletal system), section 3.00 *et seq.* (cardiovascular system), section 4.00 *et seq.* (respiratory disorders), section 9.00 (endocrine disorders), and Listings 12.04 and 12.06 in section 12.00 *et seq.* (mental disorders) (Tr. 22-23). The ALJ indicated that she considered the impact of obesity on Plaintiff's co-existing impairments in making the severity assessment at step two, the listings assessment at step three, and the residual functional capacity assessment at step four (Tr. 22).

At the fourth step, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that

---

2  The ALJ devoted a paragraph to specifically explain why the alleged hearing loss in Plaintiff's left ear has not been established as a medically determinable impairment (Tr. 21).

Plaintiff has the following postural, environmental, and mental limitations: (1) can occasionally climb stairs and ramps; (2) can never climb ladders or scaffolds; (3) can frequently balance and stoop; (4) can occasionally kneel, crouch, and crawl; (5) must avoid concentrated exposure to hazards (such as unprotected heights and moving mechanical parts), extreme heat, extreme cold and industrial vibrations; (6) can only occasionally operate a motor vehicle; (7) is limited to understanding, remembering, and carrying out simple instructions; (8) can have occasional interaction with supervisors, co-workers and the public; (9) can make simple, work-related decisions; (10) can tolerate occasional change in work location; and (11) is unable to work at a strict production rate, like the rate required to work on an assembly line (Tr. 24). The ALJ considered the vocational expert's answers to the post-hearing interrogatories and determined that the above RFC precludes Plaintiff's performance of any past relevant work (Tr. 32).

The ALJ proceeded to the fifth step where he considered Plaintiff's RFC, age, education, and past work experience as well as testimony from the vocational expert (Tr. 32-33). The ALJ found that Plaintiff is capable of performing a significant number of jobs that exist in the national economy (Id.). Therefore, the ALJ concluded that Plaintiff has not been under a "disability," as defined in the Social Security Act, from October 15, 2017, the amended onset date, through the date of the decision, February 7, 2017 (Tr. 33).

Plaintiff timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 356-58). The Appeals Council denied Plaintiff's request for review (Tr. 1-4).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the RFC to return to his or her past relevant work?

> 5) Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

### Finding Nos. 10 and 11

1. Arguments of the Parties

Plaintiff challenges Finding Nos. 10 and 11 by arguing they are not supported by substantial evidence in the record (DN 16 PageID # 1382-86). More specifically, Plaintiff argues the vocational expert's response to the step five hypothetical question does not provide substantial evidence for the ALJ's determination, "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs **that exist in significant numbers in the national economy** that the claimant can perform" (Id. citing Tr. 33, 537) (emphasis added). Plaintiff explains that the vocational expert's response identified three jobs—printed circuit board inspector with 2,700 jobs nationally, table worker with 3,000 jobs nationally, and film touch-up inspector with 1,200 jobs nationally—but included the limiting comment, "[n]o other jobs available" (Id. at PageID #1383, citing Tr. 537).³ Plaintiff argues that under the regulations this exclusive list does not constitute a "significant number" of jobs in the national economy because it only identifies a combined total of 6,900 jobs (Id. at PageID # 1383-86). Plaintiff contends that

---

3 Plaintiff explains that the ALJ did not solicit testimony from the vocational expert during the hearing (DN 16 PageID # 1382, citing Tr. 69). The ALJ instead arranged for Plaintiff to undergo a post-hearing consultative medical evaluation, and then the ALJ submitted written interrogatories to the vocational expert (Id. at PageID # 1383, citing Tr. 528). After receiving the vocational expert's response to the interrogatories, the ALJ sent a proffer of that response to Plaintiff's representative, allowing for the submission of written comments about the evidence or the applicable law in light of the new evidence for the ALJ's consideration (Id. citing Tr. 535-38). Plaintiff contends that she submitted a written memorandum addressing the vocational expert's answers and explaining why the number of jobs identified by the vocational expert should not be considered a "significant number" of jobs in the national economy (Id. citing Tr. 544-45).

the ALJ's determination is based on her mistaken belief that the vocational expert identified "representative occupations" which are part of a larger group of jobs that the hypothetical individual would be able to perform (Id. citing Tr. 33). Citing the Sixth Circuit opinion in Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988), Plaintiff encourages the Court to consider many criteria—including the distance Plaintiff is capable of travelling to engage in the assigned work, the isolated nature of the jobs, the types and availability of such work—in determining whether the jobs identified exist in "significant numbers" (Id. at PageID # 1384). Plaintiff asserts, "[i]f these identified jobs were spread evenly nationwide, fewer than 100 of such jobs would be expected to be found in the Plaintiff's home state according to the percentage of national population" (Id.). Plaintiff also points out that the ALJ's decision did not discuss any of the factors mentioned in Hall in arriving at the conclusion (Id. at PageID # 1384-85).

      Defendant contends that the ALJ properly relied on the vocational expert's response—to the step five hypothetical question—and reasonably concluded that 6,900 jobs in the national economy is sufficient to find there are jobs that exist in "significant numbers" in the national economy that Plaintiff can perform (DN 21 PageID # 1402-16). Defendant points out that the factors mentioned in the Sixth Circuit's opinion in Hall are suggestions and the ALJ is not required to explicitly consider each factor (Id. citing Harmon v. Apfel, 168 F.3d 289, 292 (6th Cir. 1999)). Further, Defendant asserts that in 2016 the Sixth Circuit specifically found that 6,000 jobs nationwide represents a significant number (Id. citing Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 905 (6th Cir. 2016)). Defendant also points to a 2009 Sixth Circuit unpublished opinion which found that 2,000 jobs nationwide represents a significant number (Id. citing Nejat v. Comm'r of Soc. Sec., 359 F. App'x 574, 579 (6th Cir. 2009)).

2. Applicable Law

At the fifth step, the Commissioner has the burden of demonstrating a significant number of jobs exist in the national economy that the claimant can perform, given his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v) and (g), 404.1566(a); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 684 (6th Cir. 1992); Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990); Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When a claimant's age, education, previous work experience, and RFC coincide with all of the criteria of a particular Grid Rule in Appendix 2 of the regulations, referred to as the medical-vocational guidelines, the Commissioner may rely on that Grid Rule to meet this burden. 20 C.F.R. § 404.1569; Grid Rule 200.00; Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1174 (6th Cir. 1990); Moon, 923 F.2d at 1181. However, if a claimant's age, education, previous work experience, and RFC do not coincide with all the criteria of a particular Grid Rule, the Commissioner is limited to using the Grid Rule as a framework in the decision-making process and must make a non-guideline determination based on the testimony of a vocational expert. 20 C.F.R. § 404.1566(e); Born, 923 F.2d at 1174; Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987); Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 531, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). For example, if the claimant suffers from an exertional and a non-exertional impairment then the Grids may be used only as a framework to provide guidance for decision making. 20 C.F.R. § 404.1569a(d); 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(e); Abbot v. Sullivan, 905 F.2d 918, 926-927 (6th Cir. 1990); Cole v. Sec'y of Health & Human Servs., 820 F.2d 768, 771 (6th Cir. 1987); Kirk, 667 F.2d at 528-529.

3. Discussion

During the administrative hearing, after the ALJ and counsel completed their oral examinations of Plaintiff, the ALJ did not solicit vocational expert testimony (Tr. 69-70). Instead, the ALJ determined that Plaintiff should undergo a consultative medical evaluation to assess her functional capacity (Id.). Plaintiff underwent the consultative examination on August 25, 2018 (Tr. 1302-14). The consultative examiner, Dr. Zaid Aljuboori, issued a report indicating the following:

> No limitation with sitting, handling, speaking, listening, or reasoning. She doesn't have limitation with social interaction. No limitation with gross and fine hand and fingers movement. She can walk about 15 minutes, he [sic] can stand for about 30-40 minutes. An assistive device is not necessary for ambulation. Range of motion no limitation except for lumbar flexion.

(Tr. 1304).

By letter dated October 29, 2018, the ALJ provided the vocational expert, Barry J. Brown, with a Compact Disc containing exhibits in the record and vocational interrogatories seeking his professional opinion in connection with Plaintiff's disability claim (Tr. 528, 529-32). Interrogatory No. 7 sets forth a hypothetical question that includes Plaintiff's age, education, work experience, and RFC (compare Tr. 24, 32 and Tr. 536). Interrogatory No. 10 asked the vocational expert to identify any unskilled occupations that exist in the national economy that the individual described in Interrogatory No. 7 could perform (Tr. 537). The vocational expert's response to Interrogatory No. 10 reads:

> 1. Printed Circuit Board Inspector - 726.684-110 - 2,700 in USA
> 2. Table Worker - 739.687-182 - 3,000 in USA
> 3. Film Touch Up Inspector - 726.684-050 - 1,200 in USA
> No other jobs available

(Id.).

The ALJ's decision indicates that the vocational expert's interrogatories were proffered to Plaintiff's counsel, "who offered no objections to the evidence" (Tr. 18).[4] The first paragraph in a February 1, 2019, letter from Plaintiff's counsel to the ALJ, acknowledges that counsel previously received the proffer and "did not object to the entry of the exhibit into evidence and did not request a supplemental hearing" (Tr. 544).[5] Further, Plaintiff's memorandum to the Court does not suggest that she objected to the entry of the exhibit into evidence (DN 16 PageID # 1383). Instead, Plaintiff's memorandum takes issue with the ALJ's interpretation of the vocational expert's response to Interrogatory No. 10 (Id. at PageID # 1383-86). The Court will now address whether substantial evidence in the record supports the ALJ's interpretation of the vocational expert's response to Interrogatory No. 10.

The ALJ relied on the vocational expert's response to Interrogatory No. 10 to find—considering Plaintiff's age, education, work experience, and RFC—there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (Tr. 32-33, Finding No. 10). But, in making this determination, the ALJ interpreted the expert's response to Interrogatory No.

---

[4] The ALJ's decision does not specify when she sent the proffer to Plaintiff's counsel (Tr. 18). Plaintiff indicates the proffer was dated November 7, 2018 (DN 16 PageID # 1383 n.1). The Court Transcript Index indicates that a November 7, 2018 proffer is located at Exhibit No. C24E (DN 16 PageID # 1383 and n.1; see DN 11 PageID # 58). However, Exhibit C24E does not actually contain a proffer dated November 7, 2018 (Tr. 540-42). Rather, the Exhibit contains a proffer dated September 7, 2018 which concerns the consultative examiner's report (Id.). Thus, the ALJ's proffer correspondence to Plaintiff's counsel does not appear to be in the administrative record.

[5] Counsel's letter, dated February 1, 2019, explains why Plaintiff believes that the vocational interrogatories are supportive of a finding of disability (Tr. 544-45). Apparently, the ALJ did not have an opportunity to consider counsel's argument because the letter is not included in the list of exhibits to the ALJ's decision dated February 7, 2019 (Tr. 18-34, 35-40). Counsel's letter is, however, included in the list of exhibits that the Appeals Council considered when it denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4). As the Appeals Council considered counsel's letter, but declined review, the Court will not consider this letter in deciding whether to uphold, modify, or reverse the final decision of the Commissioner. See Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

10 as identifying three "representative occupations" that the hypothetical individual would be able to perform (Tr. 33). The ALJ depend on Finding No. 10 to conclude that Plaintiff had not been under a disability from October 15, 2017, the amended alleged onset date, through the date of the decision (Tr. 21, Finding No. 2; Tr. 33, Finding No. 11).

As mentioned above, the vocational expert's response to Interrogatory No. 10 identifies three job titles from the Dictionary of Occupational Titles ("DOT") and includes the comment "[n]o other jobs available" (Tr. 537). This qualifying comment indicates that the vocational expert provided an exclusive list of job titles that the hypothetical individual could perform. Thus, substantial evidence does not support the ALJ's finding that the vocational expert intended these three job titles to be "representative occupations" of what the hypothetical individual can perform.

The Court must now examine the record to make a case-specific determination whether the ALJ's error is prejudicial or harmless. Shinseki v. Sanders, 556 U.S. 396, 407. Plaintiff carries the burden of showing that prejudice resulted because he seeks to have the final decision of the Commissioner set aside due to this error. Id. at 409.

To demonstrate prejudice, Plaintiff asserts that the three identified occupations do not satisfy the "significant" number of jobs requirement under the regulations because the vocational expert indicated they had a combined total of only 6,900 jobs nationwide. In Taskila v. Comm'r of Soc. Sec., 819 F.3d 902, 904, 905-06 (6th Cir. 2016), the Sixth Circuit addressed an argument that two jobs with a combined total of 6,000 jobs nationwide does not amount to "significant numbers" of available jobs. It noted that caselaw, within the Circuit and elsewhere, indicated otherwise. Id. The Sixth Circuit commented "[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant.'" Id. (*see, e.g.,* Nejat v.

Comm'r of Soc. Sec., 359 Fed. Appx. 574, 579 (6th Cir.2009) (2000 jobs); Liskowitz v. Astrue, 559 F.3d 736, 743 (7th Cir.2009) (collecting cases to conclude "it appears to be well-established that 1,000 jobs is a significant number"); Jenkins v. Bowen, 861 F.2d 1083, 1087 (8th Cir. 1988) (500 jobs); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1479 (9th Cir.1989) (1266 jobs)).

In reaching the above conclusion, the Sixth Circuit pointed out that the significant-numbers inquiry is a fact question reviewed for substantial evidence. Taskila, 819 F.3d at 905-06. "That an ALJ must tailor the determination of what is significant to the facts of each claimant's case is why we have said that ALJs 'should consider many criteria in determining whether work exists in significant numbers.'" Id. at 906 (quoting Hall v. Bowen, 837 F.2d 272, 275 (6th Cir. 1988)). It is also why the Sixth Circuit has explained that it "cannot set forth one special number which is to be the boundary between a 'significant number' and an insignificant number." Id. (quoting Hall, 837 F.2d at 275). "And it is why substantial evidence review applies." Id. (citing Hall, 837 F.2d at 275; 42 U.S.C. § 405(g)).

Under that standard, the ALJ did not commit a reversible error. Substantial evidence supports the conclusion that Plaintiff can perform three occupations that are meaningfully available nationally with a combined total of 6,900 jobs. Thus, the "significant" number of available jobs requirement is satisfied by substantial evidence in the record. See id. at 905-06 ("significant" number of available jobs requirement satisfied because substantial evidence supported the conclusion that Taskila could perform at least two occupations that were meaningfully available nationally (6,000 jobs)). For these reasons, the Court holds that substantial evidence supports the ALJ's ultimate determinations in Finding Nos. 10 and 11.

## Conclusion

As the Court noted previously, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how this Court may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Rather, this Court is only to find if substantial evidence exists to support the ALJ's decision and if the ALJ followed the applicable law. (Id.). After reviewing the record, the Court concludes while substantial evidence does not support the ALJ's determination that the three occupations identified by the vocational expert are "representative occupations," the error is harmless, and the ALJ's ultimate determinations in Finding Nos. 10 and 11 are supported by substantial evidence in the record and comport with applicable law. Therefore, Plaintiff is not entitled to relief with regard to her challenge to Finding Nos. 10 and 11.

## ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

July 26, 2021

H. Brent Brennenstuhl
United States Magistrate Judge

Copies: Counsel